Slip Op. 15 - 74

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **TYCO FIRE PRODUCTS L.P.,** | |
| Plaintiff, | |
| v. | **Before: Jane A. Restani, Judge** |
| **UNITED STATES,** | **Court No. 08-00190** |
| Defendant. | |

## OPINION

[Plaintiff's motion for summary judgment is denied in Customs classification matter; Defendant's cross-motion for summary judgment is granted.]

Dated: July 10, 2015

<u>Michael E. Roll</u>, Pisani & Roll, of Los Angeles, CA, argued for plaintiff.

<u>Amy M. Rubin</u>, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, argued for defendant.  With her on the brief were <u>Benjamin C. Mizer</u>, Acting Assistant Attorney General, and <u>Jeanne E. Davidson</u>, Director.  Of counsel on the brief was <u>Chi S. Choy</u>, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Restani, Judge:  In its second motion for summary judgment, Tyco Fire Products L.P.

("Tyco") once again contends that its products, filled glass bulbs, should be classified under

Chapter 84 of the Harmonized Tariff Schedule of the United States ("HTSUS"), as parts of either

fire sprinklers or water heaters.  U.S. Customs and Border Protection ("Customs") originally

determined, and Defendant the United States ("the government") continues to argue in its second

cross-motion for summary judgment, that the products are properly classified under Chapter 70,

as articles of glass.  After denying the parties' original cross-motions for summary judgment due

to insufficient evidence as to material facts, the court now denies Tyco's motion, grants the

government's cross-motion, and holds that the filled bulbs are properly classified under

subheading 7020.00.60, as other articles of glass.[1]

## BACKGROUND

The court assumes familiarity with the facts of the case as set out in the previous opinion,

Tyco Fire Products L.P. v. United States, 918 F. Supp. 2d 1334, 1337–39 (CIT 2013) ("Tyco I"),

but they are summarized below for ease of reference.  From July 2004 to July 2006, Tyco

imported forty-two models of filled glass bulbs from two German producers, Geissler

Glasinstrumente GmbH ("Geissler") and Job GmbH ("Job") through the port of Dallas-Fort

Worth, Texas, for use in fire sprinklers and water heaters.  Id. at 1337–38.

Each of these filled bulbs is made of glass and has an inner tube which contains an air

bubble and colored liquid.  Id. at 1337.  According to the Customs' Laboratory Report, the

colored liquid is triethylene glycol.[2]  Laboratory Report No. NY20131574, DE 75-6 ("Customs'

Lab Report").   The filled bulbs function as thermal activation devices because when the bulbs

are exposed to heat, the glass exterior transfers the heat to the liquid contained in the inner tube

of the bulb, causing the liquid to expand.  Tyco I, 918 F. Supp. 2d at 1337.  As the liquid

---

[1] Tyco challenges Customs' classification decisions in two separate cases that have not been consolidated, Ct. Nos. 08-00190 and 08-00194.  The cases generally cover the same products, and therefore this opinion addresses the claims in both cases for which the parties filed identical briefs.  An order is issued simultaneously in Ct. No. 08-00194 adopting this decision.

[2] Customs' Lab Report indicates that nine of the twenty-three samples analyzed contain triethylene glycol, and the parties agree that Geissler bulbs contain triethylene glycol.  Customs' Lab Report at 1–2; Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. 5, ECF No. 84 ("Def.'s Reply").  The parties disagree as to whether the Job bulbs contain other unidentified chemicals that are essential to the proper functioning of the bulbs.  Def.'s Reply at 5.  Because the filled bulbs have the essential character of glass and are thus properly classified in Heading 7020, the exact chemical composition of the liquid would not alter the classification decision.

expands, the pressure in the bulb builds.  Id.  Once the bulb reaches its activation temperature,

which is determined partially by the size of its air bubble, the pressure inside the bulb becomes

too strong and the bulb shatters.  Id. at 1337–38 & n.5.  For bulbs used in water-based fire

sprinklers, when the bulb shatters, the valve which previously had been held closed by the bulb is

released and water is dispersed.  Id. at 1337–38.  For the filled bulbs used in water-heaters, when

the bulb shatters, a door that was previously held open by the bulb closes, cutting off the air

supply to the combustion chamber, thereby preventing an explosion.  Id. at 1338.

Customs classified the filled bulbs under subheading 7020.00.60 of the HTSUS as "other

articles of glass," and Tyco protested.  Id. at 1338–39.  The protest was denied.  Tyco filed suit

and eventually moved for summary judgment.  Id. at 1337, 1338 n.6.  Tyco argued that either all

forty-two models of filled bulbs should be classified under HTSUS 8424.90.90 as "other parts"

of goods covered by Heading 8424 or three of Tyco's forty-two bulb models should be classified

under HTSUS 8419.90.10 as parts of water-heaters, with the remainder being classified under

HTSUS 8424.90.90, as parts of fire-sprinklers.  See id. at 1338 n.6.  Tyco argued that thirty-nine

models of its filled bulbs derive their essential character from the liquid that they contain and that

the sole or principal use of the bulbs was as parts of fire sprinkler systems.  Id. at 1337, 1344.  As

to the remaining three models, Tyco argued that the sole or principal use of the bulbs was as

parts of water-heaters.  Id. at 1344.  The government filed a cross-motion for summary judgment,

claiming that the bulbs could be classified only under HTSUS 7020.00.60 and rejecting

plaintiff's classification, because statutory Note 1(c) of Chapter 84 excludes parts made of glass.

Id. at 1339, 1341.  The government argued that the bulbs derive their essential character from

their glass component and alternatively that Tyco had not established the sole or principal use of

the bulbs.  Id. at 1342–43.

Though the court found that three models of the filled bulbs were principally used in

water heaters, the court denied both parties' motions for summary judgment.  Id. at 1344–45.

Neither Tyco nor the government presented evidence on the relative weight or value of the glass

and liquid components used in the filled bulbs.  Id. at 1343.  In the absence of this information,

the court denied both parties' motions for summary judgment, concluding that it had insufficient

evidence to determine the essential character of the filled bulbs.  Id.  Additionally, because of the

conflicting evidence that Tyco and the government presented on the uses of thirty-nine models of

filled bulbs that Tyco argued were used in fire sprinklers, the court could not determine the

principal use of those bulbs as a matter of law.  Id. at 1344.  The principal use determination for

the water-heater bulbs also did not resolve the inquiry in Tyco's favor because principal use is

relevant only upon a finding that the bulbs are not excluded from Chapter 84.

In response to the court's opinion, Tyco submitted twenty-three samples to the Customs

Laboratory for testing.  Pl.'s Mem. of Law in Opp'n to Def.'s Second Cross-Mot. for Summ. J.

and in Reply to Def.'s Opp'n to Pl.'s Second Mot. for Summ. J. 5 n.1, ECF No. 79 ("Pl.'s

Reply").  The results indicate that by weight the glass is the predominant component of the filled

bulbs.  Customs' Lab Report at 1.  The average percent by weight of glass in the bulbs ranges

from a low of 68.85% to a high of 83.54%.  Id.  Inversely, the average percent by weight of

liquid in the bulbs ranges from a low of 16.46% to a high of 31.15%.  Id.  The parties also

calculated the relative importance of the glass and liquid by value.  The glass is predominantly

the more expensive component.  In the Geissler bulbs, the glass accounts for the majority of the

material cost.  Pl.'s Mem. of Law in Supp. of Pl.'s Second Mot. for Summ. J. 13, ECF No. 68-5

("Pl.'s Mot."); Def.'s Reply at 21; Decl. of Peter Rahm 2, ECF No. 68-2 ("Rahm Decl.").  For

the Job bulbs, the glass is predominantly more expensive, but the relation of glass value to liquid

value varies based the size of the bulb.  For the 5mm diameter bulbs, the glass accounts for 80%

of the material cost.  Decl. of Bodo Muller 4, ECF No. 68-1 ("Muller Decl.").  For the 3mm

bulbs, the glass accounts for 64% of the material cost.  Id.  For the 2.5mm bulbs and water-heater

bulbs, however, the glass accounts for 30% of the material cost.  Id.

Tyco has filed another motion for summary judgment, arguing once again that the filled

bulbs are properly classified in Chapter 84.  Pl.'s Mot. at 2.  Tyco provides two reasons as to

why Note 1(c) does not exclude the bulbs from classification under Chapter 84.  Id. at 11–12.

First, Tyco argues that the proportion of liquid in the bulbs is too high for the bulbs to be

considered articles of glass.  Id.  Second, Tyco argues that the glass in the bulbs is static because

"it [the glass] just sits there" and the liquid is dynamic such that its function means that the bulbs

have lost their character as glass.  Id. at 12–13.  Tyco also argues that the court should hold that

the bulbs do not have the essential character of glass because the liquid, if not more important, is

at least as important to the function of the bulbs as the glass is.  Id. at 17.  Tyco finally argues

that the court already determined that the three bulb models used in water-heaters are solely and

principally used in water-heaters and that the court should now determine that the remaining

thirty-nine models are solely and principally used in fire sprinkler systems.  Id. at 4–9.

In response to Tyco's motion, the government argues that Customs' classification of

Tyco's bulbs under Heading 7020 was correct and that Note 1(c) prevents the bulbs from being

classified under Chapter 84.  Def.'s Mem. in Supp. of Its Cross-Mot. for Summ. J. and in Opp'n

to Pl.'s Mot. for Summ. J. 11, 13, ECF No. 75 ("Def.'s Mot.").  Specifically, the government

argues that the presence of liquid in the bulb does not stop the bulb from being "of glass" and

that the bulbs derive their essential character from their glass component.  Def.'s Mot. at 14–15,

18; Def.'s Reply at 13–22.  Alternatively, and despite the law of the case which has decided the

principal use of the water-heater bulbs, the government argues that Tyco has not adequately

established the principal use of the bulbs as parts of either water-heaters or fire sprinkler systems.

Def.'s Mot. at 26–30; Def.'s Reply at 26–27.

Because the filled bulbs are excluded from Chapter 84 by Note 1(c), have the essential

character of glass, and are not more specifically described elsewhere in the HTSUS, the court

will grant the government's cross-motion for summary judgment, deny Tyco's motion, and holds

that the bulbs are properly classified in Heading 7020.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2012).  Summary judgment is

appropriate when the parties' submissions "show[] that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  USCIT R. 56(a).

Where tariff classification is at issue, "summary judgment is appropriate when there is no

genuine dispute as to the underlying factual issue of exactly what the merchandise is."  Bausch &

Lomb, Inc. v. United States, 148 F.3d 1363, 1365 (Fed. Cir. 1998).  The court makes findings of

fact and conclusions of law de novo.  See 28 U.S.C. § 2640(a).

Plaintiff has the burden of establishing that the government's classification of the product

was incorrect, but does not bear the burden of establishing the correct tariff classification;

instead, the correct tariff classification will be determined by the court.  See Jarvis Clark Co. v.

United States, 733 F.2d 873, 878 (Fed. Cir. 1984).  In determining the correct tariff

classification, the court first must "ascertain[] the proper meaning of specific terms in the tariff

provision."  David W. Shenk & Co. v. United States, 21 CIT 284, 286, 960 F. Supp. 363, 365

(1997).  That meaning is a question of law.  See Russell Stadelman & Co. v. United States, 242

F.3d 1044, 1048 (Fed. Cir. 2001).  Second, the court must determine the tariff provision under

which the subject merchandise is properly classified based upon the factual description of the

goods.  See Bausch & Lomb, 148 F.3d at 1365.  This ultimate determination is also a question of

law.  Id. at 1365–66.  The statutory presumption of correctness given Customs' classification

decisions by § 2639(a)(1) does not apply if the court is presented solely with a question of law by

a proper motion for summary judgment.  See Universal Elecs. Inc. v. United States, 112 F.3d

488, 492 (Fed. Cir. 1997).

## DISCUSSION

The General Rules of Interpretation ("GRIs") and, if applicable, the Additional U.S.

Rules of Interpretation ("ARIs") of the HTSUS provide the analytical framework for the court's

classification of goods.  N. Am. Processing Co. v. United States, 236 F.3d 695, 698 (Fed. Cir.

2001).  GRI 1 instructs that tariff classification "shall be determined according to the terms of the

headings and any relative section or chapter notes."  The section and chapter notes of the HTSUS

are not interpretive rules; rather, they are statutory law, and therefore, they must be considered in

resolving classification disputes.  See Libas, Ltd. v. United States, 193 F.3d 1361, 1364 (Fed.

Cir. 1999) (recognizing the controlling authority of chapter notes).

## I.      Exclusion From Chapter 84

As required by GRI 1, the court begins its inquiry with the relative section and chapter

notes to headings 8424 and 8419.  Chapter Note 1(c) excludes from Chapter 84 parts that are for

technical use and are of glass.  Specifically, Note 1(c) states "This chapter does not cover:

[l]aboratory glassware (heading 7017); machinery, appliances or other articles for technical uses

or parts thereof, of glass (heading 7019 or 7020)."  Chapter Note 84, 1(c).  Accordingly, if the

bulbs are "of glass," they cannot be classified in Chapter 84 as parts of other goods.

For additional guidance on the scope and meaning of tariff headings, the court may also

consider the Explanatory Notes ("ENs") to the Harmonized Commodity Description and Coding

System, developed by the World Customs Organization.  Lynteq, Inc. v. United States, 976 F.2d

693, 699 (Fed. Cir. 1992).  Although the ENs are not part of U.S. law and therefore are not

binding on the court, they are "indicative of proper interpretation" of the tariff schedule.  Id.,

(quoting H.R. Rep. No. 100-576, at 549 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N.

1547, 1582) (internal quotation marks omitted).

The ENs to Chapter 84 indicate that an item ceases to be "of glass" when it is combined

with a "high proportion" of other materials or when static components of glass are combined

with "mechanical components" of other materials, such as a motor or pump.  EN Ch. 84 at 1393

(2002).[3]  Tyco argues that because the bulbs combine glass with 16–31% liquid and alternatively

because the glass acts as a static component and the liquid operates as a dynamic component, the

bulbs are not of glass and are not excluded from Chapter 84 by Note 1(c).  Pl.'s Mot. at 10–13.

---

[3] All citations to the ENs are to the 2002 version, the most recently promulgated edition at the
time of importation.

Thus, according to Tyco, because the filled bulbs are not excluded from Chapter 84, they are more specifically described outside Chapter 70 and therefore cannot be properly classified in Heading 7020.  <u>See</u> EN Ch. 70 at 1155.[4]  The government responds that the liquid does not represent a "high proportion" of other materials and that the liquid is not a mechanical component such that the filled bulbs would be excluded from Chapter 84 by Note 1(c) and the bulbs are classified in Heading 7020.  Def.'s Reply at 13–17.

The court holds that Note 1(c) excludes the filled bulbs from Chapter 84 because the filled bulbs are "of glass."  First, the filled bulbs do not combine the glass component with a high proportion of another material, namely the liquid.  In context, the 16–31% liquid that is combined with the glass is not a "high proportion" of non-glass material.  Second, the filled bulbs do not combine a static glass component with a mechanical non-glass component.

The filled bulbs are of glass because the 16–31% of liquid combined with the glass in the filled bulbs is not a sufficiently high proportion of another material to cause the filled bulbs to lose their character of glass.  <u>See</u> EN Ch. 84 at 1393.  "[H]igh proportion" is not defined elsewhere in the HTSUS or ENs, however, the arguments presented to the court indicate that 16–31% is insufficient.  Although Tyco argues that nothing in the ENs suggest that high proportion must mean predominant or majority, and instead merely means significant, the history behind the EN indicates otherwise.  Pl.'s Mot. at 11 n.6.

The relevant EN containing the "high proportion" language was adopted after a challenge was brought before the Nomenclature Committee of the Customs Co-Operation Council ("the

---

[4] Tyco does not dispute that the filled bulbs are for technical uses.  Def.'s Reply at 9.

Council") by the German Administration.[5]  Supplemental Authority Filed with Letter to Ct.

dated June 10, 2015, ECF No. 91 ("Gov. Supp. Authority").  In evaluating whether a rotary

vacuum evaporator should be classified in Heading 8417 as an "apparatus for heat treatment of

materials" or in Heading 7021 as "machinery and appliances of glass," the Council was called

upon to examine Note (1)(c) to Chapter 84.  Id. at 13.  The Council looked to the ENs for

Heading 9025 as the only source of guidance available, which explained the dividing line

between instruments of Heading 9025 and laboratory glassware of Heading 7017.  Id. at 17.  The

ENs to Heading 9025 read "instruments normally cease to have the essential character of

glassware when they consist partly of glass but are mainly of other materials."  Explanatory

Notes to the Brussels Tariff Nomenclature 7, ECF No. 92 (emphasis added).  The challenge also

proposed the adoption of an EN that stated articles of glass would not be excluded from Chapter

84 when the glass components "are combined with an equal or greater proportion of components

of materials not excluded from [Chapter 84]."  Gov. Supp. Authority at 15.  In 1970, at its 24th

Session, the Nomenclature Committee adopted a new EN to Chapter 84 which included the

"high proportion" language.  Id. at 38.

　　　When the ENs to Chapter 84 at issue were adopted, the drafters intended to apply a

criterion for excluding glassware from Chapter 84 similar to that contained in the then existing

ENs to Chapter 90.  Id. at 33.  Therefore, because the EN to Chapter 84 was based in part on the

EN to Heading 9025, the EN to Chapter 84 should be interpreted similarly to that of Heading

9025.  Accordingly, because the presence of 16–31% liquid does not make the filled bulbs

---

[5] The Customs Co-Operation Council is the precursor to the World Customs Organization, the
body which promulgates the ENs.

mainly of liquid rather than of glass, the filled bulbs are of glass and are excluded from Chapter

84 by operation of Note 1(c).

Further, the filled bulbs also remain of glass because the liquid contained in the bulbs is

not a mechanical non-glass component combined with a static glass component, which would

cause the bulbs to lose their character of glass.  EN Ch. 84 at 1393 ("Combinations of static

components of . . . glass with mechanical components such as motors, pumps, etc., of other

materials (e.g., of metal)" as a general rule lose the character of glass).  Tyco argues that the

filled bulbs operate dynamically when heated, as the liquid expands and eventually the filled

bulbs shatter.  Although this description is correct, dynamic is not the same as mechanical, the

term used in the EN.  "Mechanical" means "of, relating to, or concerned with machinery."

Webster's Third New International Dictionary (Unabridged) 1400 (Phillip B. Gove, 1981).[6]

Plaintiff argues that "mechanical" is also defined as "relating to physical forces or

motion."  Pl.'s Surreply to Def.'s Reply to Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. 12,

ECF No. 87.  Webster's seventh definition of mechanical is "caused by, resulting from, or

relating to a process that involves a purely physical as opposed to a chemical change."

Webster's at 1401.  The parties agreed at oral argument that when the liquid heats and expands

there is no chemical reaction that alters the chemical composition of the liquid.   The parties

disagree, however, whether the expansion of the liquid and resulting shattering of the bulb is a

purely physical, and thus, mechanical process.  Although the functioning of the bulb likely meets

---

[6] A similar definition of "mechanical" was recently utilized by the court in Rubbermaid
Commercial Products, LLC v. United States, 32 F. Supp. 3d 1331, 1343 (CIT 2014) (defining
"mechanical" as "of or relating to machines or tools" based on the American Heritage®
Dictionary of the English Language (2014)).

the purely physical process definition of mechanical, that is not the proper definition of

mechanical for purposes of the EN at issue.  The EN indicates that mechanical components,

which when combined with static components of glass cause the item to lose the character of

glass, include motors and pumps and suggests that the mechanical components be of metal,

plastic, or similar solid materials.  EN Chapter 84 at 1393.  The inclusion of motors and pumps

in the EN as examples of mechanical components colors the proper interpretation of the term

"mechanical."  Although mechanical components are not limited to motors and pumps, those

examples indicate that the drafters were not intending to refer to the physical movement of atoms

when they used the term "mechanical."  There is nothing mechanical in the bulb that would

render it similar to a motor or pump and nothing in the bulb similar to machinery.

Finally, as discussed below, the filled bulbs have the essential character of glass.

Accordingly, even if the analysis under Note 1(c) to determine whether the filled bulbs are "of

glass" is not as stringent as the essential character analysis, because the filled bulbs are

essentially of glass, they are in fact of glass for purposes of Note 1(c).  Thus, the filled bulbs

cannot be classified in Chapter 84.[7]

## II.    Essential Character

As the bulbs are not classifiable in Chapter 84, the court must determine whether they are

properly classified under Heading 7020 (as articles of glass).  The ENs to Chapter 70 explain that

---

[7] Under ARI 1(c) "a provision for parts of an article covers products solely or principally used as
a part of such articles."  Accordingly, were the goods not excluded from Chapter 84, the court
would need to determine the sole or principal use of the filled bulbs to determine whether they
could be classified as parts of fire sprinklers or water-heaters.  As the goods are excluded from
Chapter 84, however, there is no need to address the parties' sole or principal use arguments,
because under Heading 7020 the goods are not classified as parts.

articles containing glass are to be classified in Chapter 70 provided they are not more specifically

covered by other headings of the HTSUS and are to be classified in Heading 7020 when the

articles are not otherwise classified in Chapter 70. EN Ch. 70 at 1155; EN Heading 7020 at 1178.

The ENs further explain that articles remain in Heading 7020 "even if combined with materials

other than glass, **provided** they retain the essential character of glass articles."  EN Heading

7020 at 1178 (emphasis in original).  The government thus argues that because the filled bulbs

retain the essential character of glass and are not more specifically described elsewhere in

Chapter 70 or the HTSUS, the bulbs are classified in Heading 7020.  Even though the bulbs

contain a liquid,[8] because they "retain the essential character of glass" they are properly

classified under Heading 7020.  EN Heading 7020 at 1178.

In evaluating goods' essential character under analogous GRI 3(b),[9] courts consider "the

nature of the material or component, its bulk, quantity, weight or value, or . . . the role of a

constituent material in relation to the use of the goods."  EN GRI 3(b), (VIII) at 4.  Courts can

also consider the article's name, other recognized names, invoice and catalogue descriptions,

size, primary function, uses, and ordinary common sense.  <u>Home Depot, U.S.A., Inc. v. United</u>

---

[8] The court notes that nothing in the Section or Chapter notes for Heading 2909 appears to
exclude the filled bulbs.  <u>See</u> Section VI Notes at 257–58; Chapter 29 notes at 369–70.  Heading
2909 covers "Ethers, ether-alcohols, ether-phenols, ether-alcohol-phenols, alcohol peroxides,
ether peroxides, ketone peroxides (whether or not chemically defined), and their halogenated,
sulfonated, nitrated or nitrosated derivatives."  Subheading 2909.19.30 specifically covers
"Triethylene glycol dichloride."  Because the essential character of the bulbs is of glass,
however, the bulbs are not properly classified in Heading 2909 and must be classified in Heading
7020.

[9] Although the outcome is the same under a GRI 1 or GRI 3(b) analysis, here the essential
character analysis is properly under GRI 1 because articles of glass combined with other
elements are still articles of glass if that is their essential character.  EN Heading 7020 at 1178.

States, 427 F. Supp. 2d 1278, 1293, 30 CIT 445, 459–60 (2006), aff'd, 491 F.3d 1334 (Fed. Cir. 2007).

Both Tyco and the government believe that the function should determine the essential character of the filled bulbs, and each argues that either the glass or the liquid performs the essential function.  The primary considerations when selecting a particular filled bulb include 1) the response time required, 2) the load the filled bulb will have to bear, 3) the environmental conditions the bulb will be placed into, and 4) the temperature rating.  Relative to the characteristics that impact the decision of which bulbs to use, the glass is an important structural element of the bulb that impacts the load factor.  Silva Dep. 59, 71, ECF No. 75-1–75-3.  The glass also impacts the response time, permits the bulb to be used in certain environments where there could be risk of corrosion, and maintains the integrity of the bulb.  See id. at 75–76, 87–89, 149, 166–67.  The glass also keeps the filled bulb in place and prevents it from activating until the proper time.  See id. at 71, 79, 87–89.  The liquid heats up, expands, and is eventually what causes the bulb to shatter.  The liquid also impacts the temperature rating and the response time. See id. at 74–75, 92–93, 132.  It is clear that both the glass and the liquid play critical roles in the proper functioning of the filled bulb.  Because both elements are indispensable to the proper functioning of the bulb and are of essentially equal importance to the proper functioning, function cannot determine the essential character of the bulbs.[10]

---

[10] Tyco argues that because both the glass and liquid are indispensable, the essential character of the bulb cannot be the glass.  Pl.'s Mot. at 14, 17 ("[I]f Material A is **at least** as important as Material B, one can say that the item no longer has the essential characteristic of Material B."); thus, according to Tyco, because of the importance of the liquid, the filled bulbs cannot have the essential character of glass.  Pl.'s Reply 4.  The court has determined, however, that even where two component materials are indispensable to the functioning of a good, it is possible for the good's essential character to come from one of those component materials.  See Alcan Food

Relying on the other essential character factors, the court holds that the essential

character of the filled bulbs is that of an article of glass.  First, in each of the filled bulb models,

the glass component weighs more than the liquid component.  The percentage weight of glass for

each model ranges from 69–84%.  Pl.'s Mot. at 11; Def.'s Reply at 5–6.  Additionally, for almost

all of the product models, the glass is the more expensive component.  For the Geissler bulbs, the

glass is always more expensive than the liquid.  Def.'s Reply at 21; Rahm Decl. at 2.  For only

the smallest of the Job bulbs and the water-heater bulbs is the glass less expensive.  Muller Decl.

at 4.  Second, the filled bulbs are known as and referred to, even by Tyco, as "glass bulbs."

Def.'s Mot. at 21; Gov. Exs. B, D, F, G, K, L, and M.  Finally, when duty was suspended for this

class of filled bulbs, and they were given a specific tariff subheading, 9902.24.26, they were

described as "liquid-filled <u>glass</u> bulbs, designed for sprinkler systems and other release devices."

Tax Relief and Health Care Act of 2006, Pub. L. No. 109–432, § 1331, 120 Stat. 2922, 3124

(emphasis added).[11]  Thus, considering all of the factors relevant to the essential character

analysis, the filled bulbs have the essential character of glass.  Customs properly classified the

filled bulbs in Heading 7020 of the HTSUS consistently with congressional intent.

---

Packaging (Shelbyville) v. United States, 929 F. Supp. 2d 1338, 1350 (CIT 2013) (holding that
although both the plastic and aluminum foil that made up the product at issue were indispensable
to its functioning, the plastic imparted its essential character because it imparted the qualities that
made the product what it was).

[11] If there was any doubt as to what duty provision was being suspended, the drafters of the
relevant United States Chapter of the HTSUS indicated the bulbs were otherwise classified under
Heading 7020.  HTSUS subheading 9902.24.26 (2011) ("Liquid-filled glass bulbs designed for
sprinkler systems and other release devices (provided for in subheading 7020.00.60)").

## CONCLUSION

For the foregoing reasons, the court denies Tyco's motion for summary judgment, grants

the government's cross-motion for summary judgment, and holds that the filled bulbs at issue are

properly classified under subheading 7020.00.60.


                                                                    /s/ Jane A. Restani
                                                                    Jane A. Restani
                                                                    Judge


Dated: July 10, 2015
        New York, New York